# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:23-cv-00103-MR-WCM

| | | |
|---|---|---|
| **SARAH BODDY NORRIS,** | ) | |
| **ABIGAIL TEMOSHCHUK-REYNOLDS,** | ) | |
| **AMY HAMILTON, ELIZABETH** | ) | |
| **FLICKINGER, ELSA ENSTROM,** | ) | |
| **ERICA DEATON, GINA DICKHAUS,** | ) | |
| **JULIA WEBER, KARA ROBERTS,** | ) | |
| **NICOLE MARTINEZ, NICOLE** | ) | |
| **MATUTE-VILLAGRANA, NORA** | ) | |
| **WATKINS, PAGEANT NEVEL,** | ) | |
| **KATHRYN HUDSON,** | ) | |
| **and ALEXANDER BERGDAHL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **CITY OF ASHEVILLE, DEBRA** | ) | |
| **CAMPBELL, D. TYRELL MCGIRT,** | ) | |
| **and DAVID ZACK,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 8].

## I.    PROCEDURAL BACKGROUND

On April 18, 2023, Plaintiffs Sarah Boddy Norris, Abigail Temoshchuk-Reynolds, Amy Hamilton, Elizabeth Flickinger, Elsa Enstrom, Erica Deaton, Gina Dickhaus, Julia Weber, Kara Roberts, Nicole Martinez, Nicole Matute-

Villagrana, Nora Watkins, Pageant Nevel, Kathryn Hudson, and Alexander Bergdahl ("Plaintiffs") filed this action against Defendants City of Asheville; Debra Campbell, in her official capacity as Asheville City Manager; D. Tyrell McGirt, in his individual capacity and official capacity as Director of the Asheville Parks and Recreation Department; and David Zack, in his official capacity as Chief of Police of the Asheville Police Department ("Defendants"). [Id.]. The Plaintiffs claim that they have been banned from Asheville city parks in violation of the First and Fourteenth Amendments of the U.S. Constitution and Article I, Sections 12, 14, and 19 of the North Carolina Constitution. [Id.]. The Plaintiffs seek relief in the form of a declaratory judgment that the city's policies are unconstitutional as applied to the Plaintiffs, preliminary and permanent injunctions, nominal damages, and attorneys' fees. [Id.].

On June 29, 2023, the Plaintiffs filed an Amended Complaint, asserting an additional claim under the First and Fourteenth Amendments and providing additional factual allegations. [Doc. 6].

On July 13, 2023, the Defendants filed a Motion to Dismiss the Plaintiffs' Amended Complaint for failure to state claim upon which relief can be granted. [Doc. 8]. The Plaintiffs filed a Response to the Motion to Dismiss

[Doc. 10] on August 3, 2023, and the Defendants filed a Reply to the Plaintiffs' Response on August 10, 2023 [Doc. 11].

Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need

not, however, accept unsupported legal allegations, see Revene v. Charles Cnty. Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

## III.    FACTUAL BACKGROUND

The Plaintiffs are all current or former residents of Asheville, North Carolina, and have all been involved in providing assistance, such as meals, to Asheville's homeless population.  [Doc. 6 at ¶¶ 8-22, 42].  In January 2022, all Plaintiffs were charged with felony littering[1] under N.C. Gen. Stat. § 14-399 in connection with their participation in protests that took place in December 2021 in city parks advocating for Asheville to allow sanctuary camping for homeless people.  [Id. at ¶¶ 42, 43].  These charges remain pending against Plaintiffs Norris, Hamilton, Flickinger, Dickhaus, Weber, Watkins, Deaton, Roberts, Hudson, Martinez, Matute-Villagrana, and Nevel.

---

[1] Under North Carolina law, "littering" occurs when a person or entity "intentionally or recklessly throw[s], scatter[s,] spill[s] or place[s] or intentionally or recklessly cause[s] to be blown, scattered, spilled, thrown or placed or otherwise dispose[s] of any litter upon any public property or private property not owned by the person," except when the litter is deposited in a space designated for litter (like a dump or garbage receptacle).  N.C. Gen. Stat. § 14-399(a).  Any person who commits littering "in an amount exceeding 500 pounds or in any quantity for commercial purposes, or who discards litter that is a hazardous waste" is guilty of a felony.  Id. § 14-399(e).

[Id. at ¶ 43]. Plaintiffs Enstrom, Temoshchuk-Reynolds, and Bergdahl all pled to lesser misdemeanor charges in January 2023. [Id.]. All Plaintiffs maintain that the charges against them are baseless. [Id. at ¶¶ 44, 45].

In March 2022, several of the Plaintiffs started receiving notices that, effective December 25, 2021, they had been banned from all city parks and recreation facilities for a period of three years based on their felony littering charges. [Id. at ¶ 47]. These notices were issued pursuant to the City of Asheville's "Restricted Access to City Parks" administrative policy ("the Policy"). [Id. at ¶¶ 27, 47]. The Policy states that:

> A person's access to a City parks may be restricted if that person violates any of the following while in a City park or on City property: City park rule, City Parks and Recreation Department program rule, City ordinance, State law, Federal law.
>
> A person who violates any of the above while in a City park may be issued a restricted access notice. This notice may be issued by any employee of the City's Parks and Recreation Department ("Parks Department") or the Asheville Police Department ("APD") upon an observed violation of any Park rule. This notice may also be provided by a member of the APD at the time of arrest or citation for any misdemeanor or felony offense committed in a City park.
>
> The length of restriction imposed shall be as follows: 1. Violation of any park rule or Parks and Recreation Department program rule – 6 months. 2. Violation of any City ordinance or the commission of any offense punishable as a misdemeanor under federal or state

law – 1 year.  3. The commission of any offense punishable as a felony under federal or state law, repeated violation of Park rules, and/or repeated commission of misdemeanor offenses – 3 years.

[Doc. 6-1: Policy at 2-3].

The Policy does not require an underlying citation, ticket, charge, indictment, or conviction to ban an individual from city parks, nor does it require any documentation of the alleged violation for a ban to be issued. [Doc. 6 at ¶ 27].  Regarding notification, the Policy states:

Any notice provided to a person that their access to City parks has been restricted will state (1) the reason why their access is restricted, (2) the length of the restriction, (3) that the person will be subject to arrest for trespassing if they enter a City park and/or recreation facility, and (4) information about how to appeal the restriction.

The name of the individual whose access is being restricted will be added to the City parks restricted access list which will be maintained by the APD and/or the City recreational facilities restricted access list which will be maintained by the Parks Department.  The APD and/or Parks Department will update the restricted access list when new names are added or removed. . . . The restricted access list shall be made available to citizens upon request.

[Doc. 6-1 at 3-4].

Individuals subject to a park ban are not entitled to notice or a pre-deprivation hearing under the Policy.  [Doc. 6 at ¶¶ 31, 35].  With regard to appeals, the Policy states:

6

An individual may appeal this decision in writing within 14 calendar days of the date of the restricted access notice. . . . All appeals must be addressed and delivered to the Asheville Parks and Recreation Department to the attention of the Parks and Recreation Director.

Scheduling of an appeal hearing shall be completed within 14 days of receipt of the written appeal and notification of the date of the appeal hearing will be mailed to the address provided by the person in his/her written appeal.

Appeals will be heard by the Parks and Recreation Director or his/her designee.  Upon receipt of a timely and valid appeal, the Parks and Recreation Director will hear whatever relevant evidence the person appealing the restriction may wish to present, and based on that evidence, may dismiss the restriction, uphold the restriction as imposed at the time of notice, or uphold the restriction but modify the duration for which the restriction is effective.

The Parks and Recreation Director shall issue and serve a written decision on such appeal within 14 days of the date of the hearing. . . . Decisions of the Parks and Recreation Director are final upon issuance.

The restriction from City parks and/or recreational facilities will remain in effect throughout the appeals process.

[Doc. 6-1 at 4] (emphasis added).  If a banned individual enters a city park or commits another violation under the policy, his ban is automatically extended by one year in addition to any extension based on the violation, and he may also be criminally charged with trespass.  [Id. at 2-3].

7

In accordance with the Policy, none of the Plaintiffs had an opportunity to object or be heard before the bans were imposed, and three of the Plaintiffs—Deaton, Nevel, and Bergdahl—were not made aware of their park bans until nearly a year later. [Doc. 6 at ¶¶ 48-49]. These three Plaintiffs therefore allege that they did not have an opportunity to appeal their bans and continued to visit city parks until they learned of their bans,[2] thereby unknowingly subjecting themselves to arrest and additional penalties. [Id. at ¶¶ 49-50]. Plaintiffs Norris, Temoshchuk-Reynolds, Hamilton, Flickinger, Enstrom, Dickhaus, Hudson, Martinez, Matute-Villagrana, and Watkins were all able to timely appeal their bans. [Id. at ¶ 53]. Each was given a short hearing presided over by Defendant McGirt as well as Deputy City Attorney John Maddux, Asheville Police Captain Mike Lamb, Asheville Police Officer Sam DeGrave, and Parks and Recreation Program Manager Christy Bass. [Id.].

Before any appeals hearings were held, Captain Lamb sent an email to Defendant McGirt and recommended that Defendant McGirt uphold the Plaintiffs' park bans. [Id. at ¶ 54]. Defendant McGirt responded, "My decision is to uphold the APD suspension," referring to the Plaintiffs'

---

[2] Although not clearly pled, the Court will infer that the Plaintiffs claim that they never received *official* notice of their bans, and thus conclude that they had no appeal rights.

suspension from city parks imposed by the Asheville Police Department. [Id.; Doc. 6-3: McGirt Emails at 2]. At their hearings, the Plaintiffs were not permitted to ask questions or review the evidence against them, and the presiding officials did not make any findings or render a decision. [Doc. 6 at ¶¶ 55-56]. Shortly after the hearings, Defendant McGirt sent all ten Plaintiffs who had appealed their bans a short form letter upholding the bans; the letters did not include findings, reasoning, or any evidence in support of upholding the bans. [Id. at ¶ 56].

After their bans were upheld, Plaintiffs Temoshchuk-Reynolds, Enstrom, and Bergdahl pled to lesser misdemeanor charges in order to avoid employment consequences from the felony charge.[3] [Id. at ¶¶ 61-62]. Plaintiff Enstrom chose to plead to a lesser charge so that she could maintain a professional license required for her job as a veterinary technician. [Id. at ¶ 62]. Plaintiff Temoshchuk-Reynolds similarly pled to a lesser charge so as to not jeopardize future employment opportunities. [Id.]. Plaintiff Bergdahl pled to a lesser charge because his job requires him to be in parks, and he hoped to have his ban reduced to one year pursuant to the Policy. [Id. at ¶ 62]. Despite these Plaintiffs' misdemeanor pleas, the three-year park bans have remained in place. [Id. at ¶ 63].

---

[3] Plaintiff Bergdahl alleges he did not appeal his ban. [Doc. 6 at ¶ 50].

The Plaintiffs allege that their park bans have had a serious effect on their professional and personal lives. [Doc. 6 at ¶ 66]. This includes their ability to continue volunteer work, to carry out job and family responsibilities, and to access public spaces in Asheville to recreate, assemble, and carry out political and social protest and speech. [Id. at ¶ 67]. Plaintiff Bergdahl, for example, works for an Asheville-based food justice nonprofit, where he regularly works in city parks "to build community gardens, conduct educational workshops promoting food justice, and organize community support for edible gardens in Asheville parks." [Id. at ¶ 70]. Plaintiff Bergdahl alleges that he can now not perform at least half of his job responsibilities and is at risk of losing his job. [Id.]. Plaintiff Martinez is an after-school teacher and babysitter and can no longer take the children under her care to field trips in the park; instead, she must ask colleagues to fill in for her and has stopped her babysitting work altogether. [Id. at ¶ 72]. Plaintiffs Norris and Deaton are both parents and have been unable to take their children to city parks. [Id. ¶¶ 75-76]. Plaintiffs Roberts and Matute-Villagrana both decided to move out of Asheville following their bans because they felt targeted and surveilled by city officials and wanted to be able to access parks again. [Id. at ¶¶ 77-78].

The Plaintiffs also allege that they have been deterred from going to city council meetings held at parks and recreation facilities, including meetings regarding the city's response to homelessness.  [Id. at ¶ 68].  The Plaintiffs are concerned that even after the expiration of their bans, they will be subjected to future bans as a result of their protests against city policies and their support of the homeless population.  [Id. at ¶ 80].  The Plaintiffs further allege that the Asheville Police Department has not investigated or charged other known parties with felony littering in instances where city staff cleaned up large amounts of trash, including one instance involving over 15,000 pounds of trash.  [Id. at ¶ 58].

On these allegations, the Plaintiffs bring four federal constitutional claims pursuant to 42 U.S.C. § 1983: (1) violations of their Fourteenth Amendment right to due process against all Defendants; (2) violations of their First and Fourteenth Amendment rights to gather, associate, and protest against all Defendants; (3) violations of their First and Fourteenth Amendment rights to speech and assembly, including equal protection violations and retaliatory and selective enforcement against all Defendants; and (4) violations of their Fourteenth Amendment rights to due process based on vagueness against all Defendants in their official capacities.  [Doc. 6].  The Plaintiffs also bring two claims under Article I of the North Carolina

Constitution: (1) violations of Section 19 rights of procedural due process, vagueness, and equal protection; and (2) violations of Section 12 and 14 rights of assembly and free speech, both against all Defendants in their official capacities. [Id.]

## IV. DISCUSSION

### A. Section 1983 Claims

"Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159–60 (4th Cir. 1997).

As an initial matter, the Court notes the three Plaintiffs who have pled guilty to misdemeanor charges—Temoshchuk-Reynolds, Enstrom, and Bergdahl—may not bring a § 1983 claim that would have the effect of challenging the validity of their convictions. Heck v. Humphrey, 512 U.S. 477, 487 (1994). "Heck v. Humphrey bars a § 1983 action if it is clear from the record that its successful prosecution would necessarily imply that the plaintiff's earlier conviction was invalid. The Heck analysis requires a close factual examination of the underlying conviction." Riddick v. Lott, 202 F. App'x 615, 616 (4th Cir. 2006).

The crux of these Plaintiffs' claim is not that their misdemeanor convictions were invalid, but rather that because of their pleas, their park bans should have ended after one year, on December 25, 2022. [Doc. 6 at ¶¶ 61-63]. The Policy provides that a misdemeanor gives rise to only a one-year ban rather than the three-year ban imposed for a felony. [Doc. 6-1: Policy at 2-3]. Therefore, these Plaintiffs seek only to vacate the remaining portion of their ban that currently extends to December 25, 2024. As such, even if these Plaintiffs were to prevail on their § 1983 claims, their misdemeanor convictions would still stand, just as Heck requires.

Because the Plaintiffs' claims present multiple constitutional issues, each will be discussed in turn.

### 1. First Claim for Relief – Due Process

The Fourteenth Amendment's due process clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. To establish a procedural due process violation under Section 1983, a plaintiff must show (1) that he has been deprived of a cognizable liberty interest and (2) that such deprivation occurred without adequate procedural protections. Swarthout v. Cooke, 562 U.S. 216, 219 (2011). At a minimum, procedural due process requires "fair notice" of impending governmental action and "an opportunity to be heard."

<u>Snider Int'l Corp. v. Town of Forest Heights</u>, 739 F.3d 140, 146 (4th Cir. 2014).

The Supreme Court has recognized the right to access parks and other spaces open to the public as well as the First Amendment rights implicated by such access. <u>City of Chicago v. Morales</u>, 527 U.S. 41 (1999) (plurality opinion) ("[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage, or the right to move to whatsoever place one's own inclination may direct." (internal quotations and citations omitted)); <u>Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n</u>, 460 U.S. 37, 45 (1983) ("[S]treets and parks . . . 'have immemorially been held in trust for the use of the public, and . . . have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" (quoting <u>Hague v. CIO</u>, 307 U.S. 496, 515 (1939))).

The Plaintiffs here allege they have been prohibited from accessing any city parks or travel throughout the city greenways since the imposition of their bans. [Doc. 6 at ¶ 100]. The Plaintiffs further allege that this prohibition has impacted their First Amendment rights, as they were all involved in advocacy efforts that take place in city parks, as well as their ability to do their jobs and care for their families. [<u>Id.</u> at ¶¶ 68-76]. The Plaintiffs have

therefore sufficiently alleged a deprivation of a cognizable liberty interest in their First Amendment rights to access and gather in public parks.[4]

The Court must next determine whether the Plaintiffs have sufficiently alleged that they were not afforded "an opportunity to be heard" before being deprived if such a liberty interest. Snider, 738 F.3d at 146. The adequacy of the opportunity to be heard is governed by a three-step inquiry: "a balancing of the private interest and the public interest, along with 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" Id. at 146 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). Due process requires that the hearing "must be a real one, not a sham or a pretense." Jt. Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 164 (1951) (Frankfurter, J., concurring) (quoting Palko v. Connecticut, 302 U.S. 319, 327 (1937)).

On its face, the Policy provides no requirement of an opportunity to be heard before bans take effect, only for appeals hearings once notice is provided. [Doc. 6-1 at 3-4]. During their appeals hearings, the Plaintiffs were not permitted to ask questions or review the evidence against them; they

_____

[4] The alleged deprivation of Plaintiff's First Amendment rights is discussed further in the next section.

were also not provided any findings or reasoning in support of their appeals being denied.   [Id. at ¶¶ 55-56].   The procedures employed by the Defendants create a substantial risk of an erroneous deprivation given that individuals can be banned from parks based solely on "observations" of park rule violations even though they may be denied the opportunity to question the officials banning them on what the basis for their bans are.  Based on the alleged facts, the probable value of additional procedural safeguards, even minimal ones, is considerable, as requiring hearings before a decision is issued or allowing an individual to question the officer imposing the ban would substantially reduce the likelihood of an individual being issued a ban mistakenly or without cause.  Moreover, the Plaintiffs allege that Defendant McGirt explicitly told Asheville Police Captain Lamb that he had decided to uphold the bans even before the hearings were held, which would further suggest that the hearings were merely a pretense and not bona fide opportunities for the Plaintiffs to be heard.  [Id. ¶ 54].  For the foregoing reasons, the Defendants' Motion to Dismiss fails with respect to the Plaintiffs' procedural due process claims.

## 2. Second Claim for Relief – Freedom of Association

"[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech,

assembly, petition for the redress of grievances, and the exercise of religion."
Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984). Indeed, "a
constitutionally protected right to associate for expressive purposes exists if
the activity for which persons are associating is itself protected by the First
Amendment." Willis v. Town of Marshall, N.C., 426 F.3d 251, 258 (4th Cir.
2005). Particularly "[i]n places which by long tradition or by government fiat
have been devoted to assembly and debate, the rights of the state to limit
expressive activity are sharply circumscribed." Perry Educ. Ass'n, 460 U.S.
at 45. "The right to associate for expressive purposes is not, however,
absolute. Infringements on that right may be justified by regulations adopted
to serve compelling state interests, unrelated to the suppression of ideas,
that cannot be achieved through means significantly less restrictive of
associational freedoms." Roberts, 468 U.S. at 623.

Here, the Plaintiffs have alleged that they were involved in peaceful
protests and gatherings in city parks prior to their bans. [Doc. 6 at ¶ 67].
Such peaceful demonstrations in public places are protected First
Amendment activities. Grayned, 408 U.S. at 116. The Plaintiffs further
allege that the Policy has prevented and discouraged their exercise of their
First Amendment rights. While the Plaintiffs allege in their Complaint that the
Policy is not the least restrictive means of serving a state interest, as is the

argument in a typical freedom of association claim, they also tie their First Amendment claim to their procedural due process claim. [Doc. 6 at ¶ 100]. In other words, the Plaintiffs claim they were deprived of their First Amendment rights of association without adequate process. [Id.]. As discussed above, the Plaintiffs have sufficiently alleged that the hearings they were provided were procedurally inadequate under the Fourteenth Amendment's due process requirements. Therefore, because the Plaintiffs have also sufficiently alleged a deprivation of these additional First Amendment rights, the Defendants' Motion to Dismiss will be denied with respect to the Plaintiffs' freedom of association claims.

### 3. Third Claim for Relief – Retaliation

"In order to state a colorable retaliation claim under Section 1983, a plaintiff 'must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.'" Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)) (alterations omitted).

The Plaintiffs allege they were engaging in protected First Amendment activity in a city park, namely, gathering to peacefully protest city policies and

to provide support to homeless people.  Grayned, 408 U.S. at 116 ("[P]eaceful demonstrations in public places are protected by the First Amendment.").  The Plaintiffs also allege that the Defendants' imposition of the park bans adversely affected their ability to continue those activities—they can no longer demonstrate in public parks, participate in any advocacy in city parks or on city recreational property, or enter parks to provide support to homeless people in them.

The question is whether Plaintiffs have alleged sufficient facts to plausibly assert a "causal relationship" between the Plaintiffs' protected activities and their subsequent bans.  Martin, 858 F.3d at 239.  The bans were effective as of December 25, 2021, immediately following the Plaintiffs' protesting activities.  [Doc. 6 at ¶¶ 43, 47].  The Plaintiffs also allege that other clear violations of the felony littering statute have been brought to the attention of the Defendants but did not result in any charges or park bans.  [Doc. 6 at ¶ 58].  These allegations are minimally sufficient to suggest that the Defendants do not enforce the Policy in similar situations involving similar or even greater amounts of trash, and that singling out these Plaintiffs under these circumstances gives rise to a reasonable inference that the action was taken against these Plaintiffs because of the nature of their protest and

advocacy. Therefore, the Defendants' Motion to Dismiss will be denied as to the Plaintiffs' retaliation claim.

### 4. Fourth Claim for Relief – Vagueness

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. General Constr. Co., 269 U.S. 385, 391 (1926).

"To survive a vagueness challenge, a statute must give a person of ordinary intelligence adequate notice of what conduct is prohibited and must include sufficient standards to prevent arbitrary and discriminatory enforcement." Manning v. Caldwell for City of Roanoke, 930 F.3d 264, 272 (4th Cir. 2019). However, "[t]he degree of vagueness tolerated in a law depends in part on the type of statute." Id. "Less clarity is required in purely civil statutes because the 'consequences of imprecision are qualitatively less severe.'" Id. (quoting Vill. Of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982)).

Here, the Policy, while civil in nature, imposes criminal penalties for violations. [Doc. 6-1 at 3]. The Policy states: "A person's access to a City park may be restricted if that person violates any of the following while in a City park or on City property: City park rule, City Parks and Recreation Department program rule, City ordinance, State law, Federal law." [Id. at 2-3]. Notice of restricted access "may be issued by any employee of the City's Parks and Recreation Department or the Asheville Police Department upon an observed violation of any Park rule." [Id. at 3].

While the Policy can indeed be triggered by a wide range of violations, all of these violations are otherwise proscribed by city, state, and federal laws. As such, the Plaintiffs have not sufficiently alleged that the Policy fails to provide adequate notice of what conduct is prohibited because such notice is provided by reference to existing laws and policies. The Plaintiffs do not allege that the underlying criminal statutes at issue herein are vague as to what activities are prohibited. In fact, three of the Plaintiffs pleaded guilty to related state law misdemeanors. [Doc. 6 at ¶ 43]. Therefore, the Plaintiffs have not alleged that the Policy poses any cognizable vagueness issue, and the Defendants' Motion to Dismiss will be granted with respect to the Plaintiffs' due process vagueness claims.

### 5. Qualified Immunity

"Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test (the 'qualified immunity test'): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). "Qualified immunity may be invoked by a government official sued in his personal, or individual, capacity," but is not available in an official-capacity suit brought against a government entity or a government officer as that entity's agent." Id. at 306. A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 396 (4th Cir. 2014) (quoting Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 191-92 (2d Cir. 2006)).

Given that the only government official sued in his individual capacity is Defendant McGirt, analysis of qualified immunity is limited to the claims against him in that capacity: Fourteenth Amendment procedural due process, First Amendment freedom of association, and First Amendment

retaliation.  Because, for the foregoing reasons, the Plaintiffs have plausibly claimed that their rights have been violated, it must only be determined whether these rights were clearly established.

Under the Fourteenth Amendment right to procedural due process, there is a clearly established right to an opportunity to be heard before a decision is made.  See Mathews, 424 U.S. at 333 ("This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest.").  Given that one of the claims alleged against Defendant McGirt in his individual capacity implicates the violation of a clearly established right, the Court need not reach qualified immunity analyses on the others at this time.

Qualified immunity had its genesis in the efforts to protect those who must make "split-second decisions" from the realities of "hindsight bias." Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022).  Though Qualified Immunity might extend to decision makers such as the one here, there was no split-second decision involved.  Though officials may have some leeway to make considered decisions within "gray areas," Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011), the Plaintiffs have plausibly alleged that the decisions here were outside such gray areas.

As the Plaintiffs have sufficiently alleged the violation of a clearly established right, qualified immunity will be denied at this stage of litigation.

## B. State Constitutional Claims

### 1. Fifth Claim for Relief – Procedural Due Process

"North Carolina courts have consistently interpreted the due process and equal protection clauses of the North Carolina Constitution as synonymous with their Fourteenth Amendment counterparts." Tri Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 436 (4th Cir. 2002). Because the Plaintiffs have asserted plausible federal due process claims[5] at this stage, the Defendants' Motion to Dismiss will also fail in regard to the Plaintiffs' state law due process claims, with the exception of their state law claim made under the vagueness doctrine.

### 2. Sixth Claim for Relief – Freedom of Speech

The Plaintiffs also assert a claim under Article I, Section 14 of the North Carolina Constitution, which states: "Freedom of speech and of the press are

_____

[5] In addition to the cognizable federal liberty interests the Plaintiffs allege are implicated by their park bans, the Plaintiffs have also sufficiently alleged a deprivation of the right to intrastate travel recognized under North Carolina state law. See Standley v. Town of Woodfin, 362 N.C. 328, 331, 661 S.E.2d 728, 730 (2008) ("[T]his Court has recognized a right to intrastate travel, stating that 'the right to travel upon the public streets of a city is a part of every individual's liberty, protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by the Law of the Land Clause, Article I, § 17, of the Constitution of North Carolina.'" (quoting State v. Dobbins, 277 N.C. 484, 497, 178 S.E.2d 449, 456 (1971))).

two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse." N.C. Const. art. I, § 14. The free speech provisions of the North Carolina Constitution have, in some instances, been interpreted as equivalent to those in the United States Constitution. State v. Petersilie, 334 N.C. 169, 184, 432 S.E.2d 832, 841 (1993). The North Carolina Supreme Court, however, has also recognized that it is not bound by opinions of the U.S. Supreme Court in interpreting parallel provisions of the state constitution. Id. Given the similarities of the federal and state freedom of speech protections, the Plaintiffs' state law freedom of speech claim will survive the Defendants' Motion to Dismiss for the same reasons as the federal claims.

## ORDER

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss [Doc. 8] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to the Plaintiffs' federal and state law due process claims under the vagueness doctrine. The Motion is **DENIED** with respect to all of the Plaintiffs' other claims.

**IT IS SO ORDERED.**     Signed: March 4, 2024

Martin Reidinger
Chief United States District Judge

25